UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER J. WALSH, as he is ADMINISTRATOR, CONSTRUCTION TEAMSTERS HEALTH AND WELFARE FUND and INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 379<br>Plaintiffs<br><br>vs.<br><br>BAY STATE SWEEPING & CONSTRUCTION CORP.,<br>Defendant<br><br>and<br><br>EASTERN BANK,<br>Trustee | C.A. No. 04-12053 GAO |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

I.     **INTRODUCTION**

This is an action brought to collect contributions due employee benefit funds under the terms of a collective bargaining agreement. Plaintiff (hereinafter "the Fund") is an employee benefit plan. Defendant Bay State Sweeping and Construction Corp. (hereinafter "Bay State") is a Massachusetts corporation. The action has been brought pursuant to §§502(a)(3) and 515 of the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1132(a)(3) and 1145 (hereinafter "ERISA").

The Court has exclusive jurisdiction of this action pursuant to §§502(a)(3) and (f) of ERISA, 29 U.S.C. §§1132(a)(3) and (f), without respect to the amount in controversy or the citizenship of the parties.

At this juncture, Plaintiff is before the Court on a Motion for Preliminary Injunction. Plaintiff seeks an order compelling Bay State to permit Plaintiff to audit its payroll-related books and records to determine what amounts are due.

## II. STATEMENT OF FACTS

Bechtel/Parsons Brinckerhoff, project manager of the Central Artery (I-93)/Tunnel (I-90) Project ("Big Dig"), entered into a Project Labor Agreement ("PLA") with all of the unions performing work on the Big Dig. A copy of the PLA is attached to the Complaint as Exhibit A. Local 379 was one of the signatory unions. See Affidavit of Christopher Walsh ("Walsh Aff."), par. 2. Under the terms of the PLA, contractors working on the Big Dig agreed to be bound by the terms of the union's contracts and trust agreements:

> The Contractor agrees to pay contributions to the established employee benefit funds in the amounts designated in the appropriate [collective bargaining agreement] . . . The Contractor adopts and agrees to be bound by the written terms of the legally-established Trust Agreements specifying the detailed basis on which payments are to be made into, and benefits paid out of, such Trust Funds.

Pursuant to the PLA, Bay State became bound to the terms of the Fund's collective bargaining agreement, the Massachusetts Heavy Construction Agreement (the "Agreement"). Walsh Aff., par. 3. The Agreement, like its predecessor and subsequent agreements, requires employers to make fringe benefit contributions to the Fund for each hour worked by covered employees. Id. The Agreement specifies the amount to be contributed by an employer to the Fund for each hour worked. Id. A copy of the relevant portions of the 1999-2004 Agreement is attached to the Complaint as Exhibit B. Article 20 of the Agreement states as follows:

> The Trustees or their duly designated representative shall have the right to examine the payroll records of any Employer to determine whether proper contributions are being made.

2

Despite its obligation to do so under the terms of the PLA, Bay State has repeatedly failed and refused to submit records that are required for the Fund's auditor to conduct a satisfactory examination of Bay State's payroll records for the period January 1, 2000 to the present. Walsh Aff., par. 4. The Fund's attorneys notified Bay State of its obligation to fully comply and submit to a payroll audit by certified letters dated October 1, 2003 and August 5, 2004. Copies of the October 1, 2003 and August 5, 2004 letters to Bay State are attached to the Complaint as Exhibit C. Further, upon information and belief, the Fund's auditor, Ross, Mastrogiovanni & Company, P.C. ("Ross"), has been in contact with Bay State via mail and telephone to seek receipt of the specific records needed to successfully complete a payroll audit. However, to date, Bay State has failed and refused to respond to these letters or to produce the necessary records to Ross.

Therefore, Bay State continues to owe an as yet unliquidated amount of fringe benefit contributions to the Fund for the period January 1, 2000 to the present. Walsh Aff., par. 5.

### III.   ARGUMENT

Injunctive relief is specifically authorized by §502(a)(3) of ERISA, 29 U.S.C. §1132(a)(3). Laborers' Fringe Benefit Funds, Detroit and Vicinity v. Northwest Concrete & Construction, Inc., 640 F.2d 1350, 1352 (6th Cir. 1981) ("Northwest Concrete"). A motion for preliminary injunction is addressed to the sound discretion of the court. LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir. 1983). The standard to be used by the district court in ruling on a motion for preliminary injunction is well established.

> In deciding whether to grant a preliminary injunction, a district court must weigh the following four factors: 1) the likelihood of the movant's success on the merits; 2) the potential for irreparable harm to the movant; 3) a balancing of the relevant equities, i.e. "the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is

3

      withheld," Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st
      Cir. 1991); and 4) the effect on the public interest of a grant or
      denial of the injunction.

Gately v. Comm. of Mass., 2 F.3d 1221, 1224 (1st Cir. 1993), cert. denied, 114 S.Ct. 1832 (1994) ("Gately"); Caroline T. v. Hudson School Dist., 915 F.2d 752, 754-755 (1st Cir. 1990); Agency Rent-A-Car, Inc. v. Connolly, 686 F.2d 1029, 1034 (1st Cir. 1982). Examination of each of these factors establishes that Plaintiff is entitled to the relief requested.

    **1)**    **Likelihood of Success**

"[T]he sine qua non of [the preliminary injunction standard] is whether the plaintiffs are likely to succeed on the merits." Gately, supra, 2 F.3d at 1225, citing Weaver v. Henderson, 984 F.2d 11, 12 (1st Cir. 1993). The exhibits and affidavits on file establish that Plaintiff will prevail on the merits. Bay State is bound by the Agreement to permit Plaintiff to audit its books and records. Article 20 of the Agreement requires that the Trustees or their duly designated representative shall have the right to examine the payroll records of any Employer to determine whether proper contributions are being made. The Fund's access to the books and records of Bay State is required to determine the extent of the employer's delinquency and to ensure Bay State's compliance with the terms of the Agreement, and thus is required for the sound and efficient operation of the Fund.

The United States Supreme Court and this Court have held that trustees of employee benefit funds have the right under ERISA to audit an employer's books and records to determine whether the employer is in compliance with its obligations. See, Central States Southeast and Southwest Areas Pension Fund, et al, Petitioners v. Central Transport, Inc., et al, 472 U.S. 559 (1985) (trustees of multi-employer employee benefit plans covered by ERISA have power under trust document to examine pertinent records of each employer).

4

Bay State has refused to permit an audit of its pertinent books and records for the period from January 1, 2000 through the present and, unless enjoined by this Court, there is every likelihood that it will continue to dishonor its obligations to the Fund and the employees.

**2)      Irreparable Harm**

Bay State's refusal to permit an audit renders the Fund unable to fully satisfy its fiduciary and statutory obligations to the Fund's beneficiaries and participants.  "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled . . ." <u>Central States Pension Fund</u>, 472 U.S. at 571.  The Fund is entitled to contributions for all work performed by Bay State's employees.  Walsh Aff., par. 3.  By refusing to permit an audit, Bay State denies Plaintiff the opportunity to ascertain the extent of this delinquency, and, by extension, to collect all contributions that Bay State owes the Fund.  See generally <u>Central Transport</u>, <u>supra</u>.  It also denies Bay State's employees the opportunity to receive credit for all work performed.

**3)      Balancing of Harms**

"The heart of the matter is whether 'the harm caused plaintiff without the injunction, <u>in light of</u> the plaintiff's likelihood of eventual success on the merits, outweighs the harm the injunction will cause defendants.'"  <u>Gately,</u> <u>supra</u>, 2 F.3d at 1225, quoting <u>Vargas-Figueroa v. Saldana</u>, 826 F.2d 160, 162 (lst Cir. l987) (emphasis in original).

No harm can come to the employer by being required to do that which the law commands it to do.  The demonstrated harm to Plaintiff far outweighs any harm to Defendant.

**4)      Public Interest**

Congress declared it to be the policy of ERISA to "protect . . .  the interest of participants in employee benefit plans and their beneficiaries . . . by providing for appropriate

remedies, sanctions, and ready access to Federal courts." 29 U.S.C. §1001(b).  The House Report on the Act's enforcement provisions states that they are

> designed specifically to provide both the Secretary and participants and beneficiaries with broad remedies for redressing or preventing violations of the Act.  The intent of the committee is to provide the full range of legal and equitable remedies available in both state and federal courts and to remove jurisdictional and procedural obstacles which in the past appear to have hampered effective enforcement of fiduciary responsibilities . . .

H.R. Rep. No. 93-533, 93d Cong., 2d Sess. 17, reprinted in [1974] U.S. Code Cong. & Ad. News, p. 4639, 4655.

The federal courts have interpreted this legislative history as "unambiguous evidence" that Section 502's enforcement provisions are intended to "have teeth" and to be "liberally construed." Northwest Concrete, supra, at 1352.  "Given the array of remedies that ERISA provides for redressing and preventing violations of the statute, it is not surprising that federal courts have frequently resorted to injunctive relief when it has been perceived as necessary to fully protect the statutory and contractual rights of Fund participants and beneficiaries." Metropolitan D.C. Paving Industry Employees Health and Welfare Trust Fund v. Jones & Artis Construction Co., 2 EBC 2227, 2223 (D. D.C., 1991).

"Congress made it abundantly clear that an employer would not be permitted to circumvent or ignore its funds, payment and other obligations under ERISA." A & G, citing Northwest Concrete, supra, at 1352.  The public interest in preserving the integrity of employee pension, health, and welfare plans would be furthered by issuance of the preliminary injunction.

6

IV. **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully submits that its Motion for Preliminary Injunction should be granted.

Respectfully submitted,

CHRISTOPHER WALSH, as he is
ADMINISTRATOR, of the
CONSTRUCTION TEAMSTERS
HEALTH AND WELFARE FUND, et al.

By their attorneys,

/s/ Gregory A. Geiman
Anne R. Sills, Esquire
BBO #546576
Gregory A. Geiman
BBO #655207
Segal, Roitman & Coleman
11 Beacon Street, Suite #500
Boston, MA 02108
(617) 742-0208

Dated: January 11, 2005

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction has been served by certified and first class mail upon the defendant, Bay State Sweeping and Construction Corp. at 369 3rd Street, Everett, MA 02149 this 11th day of January, 2005.

/s/ Gregory A. Geiman
Gregory A. Geiman, Esquire

GAG/gag&ts
ARS 8903 03-343/memsupinj.doc

7